```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
SUSAN F. AVERY,                                     :
                                                    :
                          Plaintiff,                :
                                                    :         18-CV-9150 (JMF)
             -v-                                    :
                                                    :         OPINION AND ORDER
JANET M. DiFIORE, et al.,                           :
                                                    :
                          Defendants.               :
                                                    :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

On October 23, 2012, Plaintiff Susan F. Avery — then a judge on New York's Housing Court — was the victim of an ugly incident of sexual harassment by her colleagues at a professional dinner event. *See* ECF No. 52 ("Am. Compl."), ¶¶ 7-11; *id.* Ex. A ("Fisher Letter").[1] Avery reported the incident, verbally at first, and then by formal letter, to Justice Fern A. Fisher, then the Deputy Chief Administrative Judge for the New York City Courts. Am. Compl. ¶ 12; *see* Fisher Letter. After Avery reported the incident, her immediate supervisor — Judge Jaya Madhavan, then the Supervising Housing Judge for the Bronx Housing Court where Avery was serving — began treating her "in a much different and more negative fashion," assigning her less desirable work, reassigning her staff, and "walking away from Avery while [she] was mid-sentence" upon meeting her in the hallways. *Id.* ¶¶ 16-17. Avery requested and received a transfer to the Kings County Housing Court, but there she continued to experience negative treatment. *Id.* ¶¶ 18-19. Finally, in 2018, after Avery

---

[1] The facts set forth herein — drawn from the allegations in the Amended Complaint and "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss," including documents attached to the complaint, statements or documents incorporated into the complaint by reference, and matters of which judicial notice may be taken — are assumed to be true for purposes of this motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

sought reappointment after the expiration of her five-year term, the Chief Administrative Judge of the New York State Courts — Defendant Lawrence K. Marks — denied her application. *Id.* ¶¶ 21, 34-35. Thereafter, Avery brought this action.

Notably, Avery does not sue her alleged harasser, let alone Justice Fisher or Judge Madhavan. Instead, she sues Judge Marks and four other active New York State judges — Judges Anne Katz, Cheryl J. Gonzalez, Jean Taylor Schneider, and John S. Lansden — who, at one point or another, had supervisory authority over her and whose recommendations, Avery alleges, must have contributed to the decision to deny her reappointment. *Id.* ¶ 3.[2] Avery seeks relief against all five Defendants pursuant to 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and article I, section 8 of the New York State Constitution. Avery's federal claims — the primary subject of this Opinion — turn on her allegation that Defendants denied her reappointment application in retaliation for her disclosures about the sexual harassment she had suffered, in violation of both the First Amendment and the Fourteenth Amendment's Equal Protection Clause. *See* Am. Compl. ¶¶ 39-47.

Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss all of Avery's claims. For the reasons that follow, that motion must be granted.

---

[2] Avery's initial complaint, which she filed *pro se*, also named as Defendants Janet M. DiFiore, Kay-Ann Denise Porter, Lauren Pamela DeSole, NYS Unified Court System of the State of New York, Unified Court System Office of Court Administration, John McConnell, New York City, George J. Silver, Anthony Cannataro, Miriam Breier, Gary Robert Connor, Barbara Zahler-Gringer, Ronald Paul Younkins, Housing Court Advisor Council Members/appointees, and Linda Dunlap Miller. *See* ECF No. 1. After retaining counsel, Avery voluntarily dismissed her claims against those Defendants. *See* ECF No. 50.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See*, *e.g.*, *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 58 (2d Cir. 2019). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. In a discrimination action such as this one, however, a plaintiff's burden at the motion to dismiss stage "is minimal" — that is, a plaintiff "need only plausibly allege facts that provide at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

## DISCUSSION

Defendants contend, first, that Avery's suit seeks relief against them in their official capacities and is therefore barred by state sovereign immunity and, second, that Avery's federal claims must fail as a matter of law. The Court will address both arguments, turning last to Avery's state-law claims, as to which Avery invokes the Court's supplemental jurisdiction.

**A. Sovereign Immunity**

Defendants argue, in the first instance, that all of Avery's claims are brought against them in their official capacities and thus barred by New York State's sovereign immunity. Defs.' Mem. 10-12; ECF No. 60 ("Reply"), at 10. "In an official capacity suit, the real party in interest is the governmental entity and not the named official. By contrast, individual capacity suits seek to impose individual liability upon a government officer for her actions under color of law." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alterations, citations, and internal quotation marks omitted). "The identity of the real party in interest dictates what immunities may be available." *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017). "Defendants in an official-capacity action may assert sovereign immunity," including Eleventh Amendment immunity, if they are state officials. *Id.* "An officer in an individual-capacity action, on the other hand, may be able to assert personal immunity defenses . . . . But sovereign immunity does not erect a barrier against suits to impose individual and personal liability." *Id.* (alterations, citations, and internal quotation marks omitted).[3]

Here, "[a]n examination of the substance of the complaint and the course of proceedings" leads the Court to conclude that Avery seeks relief against Defendants in their individual, not official, capacities. *Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995). Although Defendants maintain that they were exercising the powers of their offices when they participated in the alleged conduct at issue, *see* Reply 10, that is not determinative. To the contrary, the Supreme Court has squarely rejected "the novel proposition that [the] same official authority" that triggers personal Section 1983 liability for acts done "under color of law" also "insulates [officials] from suit." *Hafer v. Melo*, 502 U.S. 21, 28 (1991). Indeed, in *Hafer*, the Supreme Court allowed a Section 1983 suit to proceed

---

[3] Examples of "personal immunities" often invoked in Section 1983 litigation include absolute judicial and prosecutorial immunity and qualified immunity. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 28-29 (1991). Defendants do not assert any such personal immunities here.

against a state official in circumstances remarkably similar to those here — a post-termination lawsuit alleging a violation of First Amendment rights, *see Melo v. Hafer*, 912 F.2d 628, 632 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) — holding that, even though the defendant's "power to hire and fire derived from her [official] position," the plaintiff's "suit for damages based on the exercise of this authority could be brought against [her] in her personal capacity," *Hafer*, 502 U.S. at 24.

In fact, individual-capacity lawsuits against government officers for actions taken in the exercise of their official duties represent the rule, not the exception, in Section 1983 litigation. On top of that, it is up to a plaintiff in the first instance to choose what types of remedies to seek (although the facts and applicable law — including personal immunities — will ultimately dictate what types of remedies, if any, are available). *See id.* at 31 (noting concerns that "imposing personal liability on state officers may hamper their performance of public duties," but explaining that "such concerns are properly addressed within the framework of . . . personal immunity jurisprudence"). Here, Avery purports to be suing Defendants in their individual capacities. *See* ECF No. 59 ("Avery Opp'n"), at 15. Moreover, she "seeks punitive damages, which are not available against the state," thus suggesting that she sues Defendants in their individual capacities. *Rodriguez*, 66 F.3d at 482; *see* Am. Compl. 18. Accordingly, although the question is a close one, the Court concludes that Avery seeks relief against Defendants in their individual capacities and, thus, that the Eleventh Amendment does not pose an obstacle to her claims.

## B. The Federal Claims

With that, the Court turns to Avery's federal claims, brought pursuant to Section 1983. Avery alleges that the decision not to reappoint her violated the First Amendment because it was made in retaliation for protected speech and violated the Equal Protection Clause of the Fourteenth Amendment because it was made in retaliation for a a complaint about sexual harassment, a form of sex discrimination. To prevail on either type of claim, a plaintiff must establish, among other things,

"a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. . . . Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citations and internal quotation marks omitted) (First Amendment); *Vega*, 801 F.3d at 82 (Equal Protection Clause). Thus, to survive a motion to dismiss either claim, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal quotation marks omitted); *accord Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Generally speaking, "[c]ausation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Duplan*, 888 F.3d at 625.

In this case, Avery fails to allege sufficient facts to "provide at least minimal support for the proposition that [Defendants were] motivated by" retaliatory intent, much less for the proposition that such intent was the "but-for" cause of the decision not to reappoint Avery. *Vega*, 801 F.3d at 86-87. Notably, Avery does not point to, and her Amended Complaint does not contain, any allegations that could constitute direct evidence of a retaliatory motive. Nor does she allege sufficient "temporal proximity" between her protected activity (her complaints in 2012 and 2013) and the denial of her reappointment (in 2018) to support an inference of causation. *See, e.g.*, *Britt v. Thermald Realty I, LP*, No. 13-CV-8289 (KPF), 2015 WL 4922977, at *19 (S.D.N.Y. Aug. 18, 2015) (collecting cases suggesting that gaps over eighteen months cannot support an inference of causation based on "temporal proximity"). Nevertheless, she contends that retaliatory intent can be inferred from the "five-plus years of abusive conduct" she endured between reporting the incident of sexual harassment and the decision not to re-appoint her. Avery Opp'n 8-10. That conduct, she maintains, amounted to a "continual campaign of retaliation and harassment as a result of reporting the Incident" and suffices to connect her protected activity to the denial of her reappointment. *Id.* at 10.

There is certainly legal support for that theory of causation. *See, e.g.*, *Duplan*, 888 F.3d at 626 & n.11 (citing cases approving of a "first available opportunity" theory of causation in the retaliation context and ultimately finding that the plaintiff had alleged a "drumbeat of retaliatory animus from which a plausible inference of causation [could] be drawn"). And the argument begins on sure enough footing, as Avery alleges that Judge Madhavan, her supervisor at the time, subjected her to negative treatment in the immediate aftermath of her complaints. Am. Compl. ¶ 16-17. But that is where the "drumbeat" — or, to put it differently, the plausible chain of causation — ends. Judge Madhavan was not Avery's supervisor at the time she came up for reappointment. (Indeed, as of the filing of the Amended Complaint, he had not even been a judge "for at least several years." Am. Compl. ¶ 35.) Nor is there any allegation that Judge Madhavan contributed to Avery's termination in any way. In any event, Judge Madhavan is not a Defendant here and, in the absence of any factual allegations that he contributed to Defendants' decision-making, *his* alleged mistreatment of Avery cannot serve as a basis for *Defendants'* liability.

And indeed, Avery alleges no facts plausibly suggesting that retaliation was a "but-for" cause of Defendants' own conduct. With respect to two Defendants — Judges Katz and Gonzalez — she alleges nothing at all, except that they were presumably among the people whom Judge Marks consulted in connection with her reappointment application. Am. Compl. ¶ 3. And with respect to all four "supervising judges," Avery alleges nothing about what they said or did in connection with Judge Marks' decision. Meanwhile, the few specific facts that Avery does allege, even taken together, fall far short of connecting the decision not to reappoint her to any retaliatory motive. Avery alleges, for instance, that Judge Lansden was present when she was sexually harassed, Am. Compl. ¶ 12; that he was "a personal friend and golfing companion" of the alleged harasser, *id.*; that he was contacted in connection with the initial investigation, *id.* ¶ 13; and that he was among the supervising judges whose recommendations contributed to Judge Marks' decision, *id.* ¶ 35. But

7

Avery does not allege *any* facts (the foregoing included) that could support a reasonable inference that Judge Lansden acted out of a retaliatory motive or that his awareness of her complaint about sexual harassment contributed to Judge Marks' decision; at most, she alleges facts to support the inference that Judge Lansden knew of her protected activity and might have had a reason to dislike it. Mere awareness of a plaintiff's protected activity, however, is not itself evidence that the protected activity motivated an adverse action; if it were, a retaliation claim would have three elements instead of four. *See Littlejohn*, 795 F.3d at 316 ("To establish a presumption of retaliation at the initial stage of . . . litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; *(2) that the defendant knew of the protected activity*; (3) an adverse employment action; *and (4) a causal connection between the protected activity and the adverse employment action.*" (emphases added) (internal quotation marks omitted)).

Avery also alleges that when she received word that her reappointment application had been denied, Judge Schneider told her that she "should not worry" because Judge Schneider's own husband had overcome "years of 'bad blood'" with Mayor De Blasio to earn appointment as Commissioner of the Human Resources Administration. Am. Compl. ¶ 36. Avery argues that "Schneider was clearly analogizing the 'bad blood' between [her husband] and De Blasio with Avery's predicament, caused by Marks' decision to deny her reappointment application." *Id.* From that, she concludes that "Schneider was effectively conceding that Marks did not base his decision on Avery's reappointment application on Avery's 'performance, competency and results achieved during the preceding term' as required by statute," but instead that "his decision was based on retaliatory considerations." *Id.* ¶ 37. But Judge Schneider's remark sheds little or no light on Judge Marks's intent. And, more fundamentally, the Court is not bound to accept Avery's conclusory interpretation of the remark; instead, the Court must draw from it only the most favorable "reasonable inference" it can support. *See Twombly*, 550 U.S. at 555. And put simply, in the

8

absence of additional facts regarding the reasons for Judge Marks's decision, Judge Schneider's remark does not hold the weight Avery puts on it. That is, it does not provide even minimal support for the proposition that retaliatory intent was a but-for cause of decision of Judge Marks's decision.

To be sure, Avery's allegations, taken as true, certainly establish that she was mistreated — first, by her sexual harasser and, second, by Judge Madhavan, her supervisor at the time of her complaint, who may well have held her complaints against her. But neither her alleged harasser nor Judge Madhavan is a Defendant here. Instead, the sole Defendants are Judges Marks, Katz, Gonzalez, Schneider, and Lansden. As to *them*, Avery's allegations are insufficient to sustain a claim of retaliation, under either the First Amendment or the Equal Protection Clause. Accordingly, Avery's federal claims must be and are dismissed. Further, that dismissal is without leave to amend. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In this case, Avery neither requests leave to amend (for a second time) nor gives "any indication that [she is] in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014); *see e.g.*, *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *5 (S.D.N.Y. Aug. 1, 2019); *see also Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 821 F.3d 349, 352 (2d Cir. 2016) (per curiam) (holding that it was not an abuse of discretion to deny the plaintiffs an opportunity to amend their complaint where plaintiffs "did not ask the district court for leave to amend"). Further, after the first motion to dismiss was filed in this case (by the now-dismissed City of New York), the Court warned Avery that she would "not be given any further opportunity to amend the complaint to address issues raised by the motion (or motions) to dismiss." ECF No. 37, at 1. Defendants' motion to dismiss that complaint pointed out Plaintiff's failure to allege a discriminatory or retaliatory motive. *See* ECF No. 45 at 34-35.

9

Although Plaintiff arguably did not assert a discrete Equal Protection retaliation claim in her initial complaint, the failure to allege a discriminatory or retaliatory motive would have been equally fatal to both theories then, as — in light of the discussion above — it is now.

**C. The State-Law Claims**

Having concluded that Avery's federal claims must be dismissed, the Court turns to the question of whether to exercise supplemental jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(c). Ordinarily, where a plaintiff's federal claims are dismissed before trial, judicial economy will militate against exercising supplemental jurisdiction over any pending state-law claims. *See, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994); *accord Morales v. Dep't of Educ. of City of N.Y.*, No. 17-CV-7414 (JMF), 2019 WL 1228075, at *3 (S.D.N.Y. Mar. 15, 2019). Despite that general presumption, however, the Court concludes that the interests of judicial economy favor exercising jurisdiction over Avery's NYSHRL claims. *See Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 429 (S.D.N.Y. 2018). That is because the standards governing Avery's Section 1983 Equal Protection and NYSHRL sex-discrimination-retaliation claims are identical. *See, e.g.*, *Goodwine v. City of New York*, No. 15-CV-2868 (JMF), 2016 WL 3017398, at *5 (S.D.N.Y. May 23, 2016). Given that, and the Court's decision with respect to Avery's Section 1983 claims, "it would be inefficient, and risk inconsistency, to defer a decision on her NYSHRL claims to a state court." *Williams*, 299 F. Supp. 3d at 429. Accordingly, Avery's NYSHRL retaliation claim against Judge Marks is also dismissed. *See Goodwine*, 2016 WL 3017398, at *5. And because "[a]cessory liability . . . may be found only where a primary violation" of the NYSHRL "has been established," it follows that her NYSHRL aiding-and-abetting claims against the other Defendants must be dismissed as well. *Ardigo v. J. Christopher Capital, LLC*, No. 12-CV-3627 (JMF), 2013 WL 1195117, at *6 (S.D.N.Y. Mar. 25, 2013).

By contrast, the Court declines to exercise supplemental jurisdiction over Avery's NYCHRL claims because those claims are subject to a different standard and must be analyzed separately. *See Williams*, 299 F. Supp. 3d at 429; *see also Springs v. City of New York*, No. 17-CV-451 (AJN), 2019 WL 1429567, at *16 (S.D.N.Y. Mar. 29, 2019) (upholding aiding-and-abetting liability under the NYCHRL even though the plaintiff had failed to establish a primary violation by his employer). Similarly, although some courts have concluded that the standards for a First Amendment retaliation claim are identical to a retaliation claim brought pursuant to article I, section 8 of the New York State Constitution, *see, e.g.*, *Posteraro v. Northport-E. Northport Union Free Sch. Dist.*, No. 11-CV-5025 (JS) (GRB), 2012 WL 3289009, at *4 (E.D.N.Y. Aug. 10, 2012), the relative (old) age and scarcity of the cases on that subject, *see, e.g.*, *Rotundo v. Vill. of Yorkville*, No. 09-CV-1262 (DNH), 2011 WL 838892, at *4 n.8 (N.D.N.Y. Mar. 4, 2011) (collecting cases), combined with the general principle that the New York State Constitution affords broader protection for speech than does the First Amendment, *see, e.g.*, *O'Neill v. Oakgrove Const., Inc.*, 523 N.E.2d 277, 280 n.3 (N.Y. 1988), leads the Court to conclude that Avery should not be foreclosed from arguing to a state court that her state constitutional claim is subject to different and broader legal standards, *cf. Williams*, 299 F. Supp. 3d at 429 (observing that where the law governing state-law claims is "still developing," and the claims are "arguably governed by different legal standards," such claims are "best left to the courts of the State" (quoting *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. App'x 88, 92-93 (2d Cir. 2011))). Accordingly, the Court declines to exercise supplemental jurisdiction over Avery's NYCHRL and state constitutional claims — that is, her third, fifth, and sixth causes of action — and will dismiss them without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED. Avery's first, second, and fourth causes of action are dismissed with prejudice. The

Court declines to exercise supplemental jurisdiction over her third, fifth, and sixth causes of action, which are therefore dismissed without prejudice to refiling in state court.

The Clerk of Court is directed to terminate ECF No. 53 and to close the case.

SO ORDERED.

Dated: August 6, 2019
      New York, New York

                                      JESSE M. FURMAN
                                    United States District Judge